There are several issues that are interesting that are raised, many of which are quite contemporary. The one I'd like to address is the one that the board conceded was complex, which is the question of a statutory bar based on persecution of others. While we have argued that that didn't occur, I think the analysis would be best served if we focus in on, in a worst-case situation, was there a statutory bar? And the evidence here regarding torture, if it did occur, is not that it was done to overcome the political beliefs of an individual or because of their political beliefs. The evidence is, and I don't believe it was refuted, that Petitioner didn't care about their political opinions. He only cared about one thing, solving criminal cases. There was no argument below that the individuals who were being interrogated didn't have information about criminal acts. He was a police officer. He was completely separate from any intelligent units. As he testified, credibly, I believe, he was brought down there because soldiers capture people, but they don't interrogate them. And he was asked to obtain evidence that would stand up in court. Now, this is very similar to some of the things that we read about in the papers about people who were detained, I understand, under different circumstances. But the analogy is that there's a difference between using techniques to get information to solve crimes, which we may not find approvable or even constitutional under our system, and persecuting people to overcome their political opinions. As distasteful, as horrible, as some of these actions may have been if they occurred, they did not occur because Petitioner and his fellow police officers didn't like the political views of the people they were questioning. Let me see if I understand your argument. Is your argument at bottom that it doesn't matter if he tortured people so long as he don't torture them for political opinion? He would not be statutorily barred from asylum if that were the finding. So you don't think that torture itself is an exclusion? It has to be torture for one of the five reasons? My read of the statute is that to be statutory, as opposed to a discretionary bar, to be statutorily cut off, it has to be torture on account of one of the grounds enumerated in Section 208. Okay. And that is statutory? Yes. And you get that from Section 208? Yes. And also from, I think, the case that was probably the most helpful to us was the, I hope I'm pronouncing it right, the Leipnitz case. Okay. That was the case in which they found that someone who had worked with the Nazis to basically torture communists was not statutorily barred as a persecutor on account of a protected ground, that even though they were communists, the reason that they were being arrested and tortured was because they had betrayed their country to the Nazis during the Nazi occupation. So I believe that case would support what I think is a fair reading of the statute. Which case is that? The Leipnitz case. Oh, yeah. Counsel, let's suppose that you're correct, that it must be torture on account of political opinion. On page three of the IJ's opinion, she notes that the Mr. Zavaios was assigned to Ayacucho Prison, which was in an emergency zone where Shining Path, Sendero Luminoso, was known to be active, and that his duty was to help interrogate prisoners captured by the Army. Although he was a policeman, he was, it seems a little strange that he would just be interrogating people who were picked up for crime if they're being picked up by the Army in an emergency zone. And I'm quoting from the IJ's opinion, the prisoners, mostly indigenous farm workers, were questioned regarding any participation in the Shining Path, any knowledge they had of Shining Path's leaders and the Shining Path's whereabouts and plans. Now, is that finding by the IJ clearly erroneous? It's not clearly erroneous, but it's not complete. What Petitioner testified was that he was brought down there in his role as a police officer. His specific duties were to obtain evidence that could support prosecutions and convictions in court. There, as we say in our brief, clearly there's documentary evidence that individuals in Peru were tortured by both sides, strictly on account of their political opinion, for no other reason. This wasn't one of those cases. Petitioner was trying to prove the crimes against the Sendero Luminoso. Just because a group has a political agenda doesn't mean they're immune from criminal prosecution. One can have a political agenda and also be committing crimes. There, I'm sure in Peru, our intelligence officers and counterintelligence agencies that are going to ferret out people for their political reasons and try and convince people to hold a different political opinion. That wasn't what Petitioner's assignment was, and there's no evidence that he was not truthful as to why he was sent down there. Why would Mr. Zavaios be persecuted on account of his political opinions? Well, what we're saying is it would be indirect. He'd be persecuted because of his membership in a particular group, which is former police officers who interrogated the Sendero Luminoso. And he claims that he was threatened by members of Sendero Luminoso. That's right. Now, if he's just participating with the police in interrogating people who are wanted on criminal acts, then why would he be persecuted on account of his political opinion if he wasn't torturing people on account of theirs? Well, I could speculate that the Sendero, I think it's more than a speculation. Sendero Luminoso wants the criminal activity to continue. They want the bombings, the assassinations, the abductions, the arson to continue. And they don't want policemen to stand in their way, as he testified that he learned through a girlfriend, who was apparently an affiliate of the Senderos, that his name was on a list. I don't think there's any doubt whatsoever in the record, the background materials, that Sendero Luminoso has routinely killed police officers and soldiers and government officials. They want to bring down the government, and they want to kill anybody who helps support the government. Could you go back to the case you cited? You indicated that the persecution or torture must be involved on one of the five grounds. And you cited Section 208. The case to which you made reference doesn't cite that section. It cites 1251 small a 19. And there it says that that section requires only when sustained the individual establishes the individual in question personally ordered and cited to assist or others to participate in persecution of individuals. There's no indication it has to be on any particular ground. I agree with you. The case was cited because there isn't a tremendous amount of authority on this, probably fortunately. However, that case does explain that torture can be for different reasons, that just because someone has a political opinion doesn't mean that torture inflicted on them is to overcome that political opinion. And that is what our argument here is that if there was torture, which is separate from our other argument, if there was torture, that it was not inflicted, at least not by this petitioner, by one of the grounds that the judge, the I.J., found that he had inflicted torture on account of their political opinions. But what I'm suggesting to you is it leaves open the argument that perhaps it doesn't have to be on any particular ground. A person who commits torture for any reasons is excluded. Is that a fair reading under the language of the case? Your Honor, I don't know the answer to that question. I know that the answer is under 208. It's specific. The bar, the per se exclusion is on account of persecution for a protected status. And that is the reason why the I.J. and the board found that Mr. Zavalos was statutorily ineligible. If there are other mandatory bars as opposed to discretionary bars, they haven't been raised. If the case was remanded, I'm sure they would be raised by the government. And if the Court does not have any questions about, further questions about the connection, the nexus between torture and a protected status, I'd like to speak very briefly about the counsel problem. I don't want to belabor it, but it does appear that the case would have been presented somewhat differently if counsel, who is a very distinguished counsel, I might add, had have said to Mr. Zavalos at some time, I don't believe you, or even more tactfully, I'm not in a position to help you do what you like to do. I think you should go see other attorneys. They might see things differently. And we wouldn't have had a contest, a credibility contest between counsel and the client, which is about the worst position an attorney can ever be put in. Could I ask you a question on that issue? Yes. The switch in counsel took place while the case was still before the I.J. Correct. Is the issue waived because it was not raised before the I.J.? Where's the exhaustion? Well, Your Honor, the exhaustion, the argument, if you're implying – I just went over my time, but I'll answer your question. This is not a motion to reopen. This is – we're challenging the basis, the decision upon which the I.J. based her finding. It wasn't until she made her finding and said, I am finding that counsel was credible because of the following. He had no motive to lie, whereas Petitioner did, that his testimony became an issue. Well, assuming you get past that one, you still have the hurdle of Lozanda, which I've read the record, and it's pretty hard to say that Lozanda was complied with. I understand your argument that we don't always require all the Ts to be crossed. But do you concede that if Lozanda is not complied with, there's no issue? Lozanda is only required when there's a motion to reopen where the matter was not brought to the attention of the agency previously. Therefore, it couldn't be preserved for appeal. In this case, everything that happened happened on the record. All of the actions that are discussed are based on testimony that happened in court. There is – it's not a case of someone coming forward after the fact and saying, my attorney told me this or didn't tell me this. That's why, as I say in the brief, it is an unusual situation where the issue is able to be presented without the need to go outside the record. Well, it wasn't presented before the board. But even saying that, Lozanda requires, for example, an affidavit indicating the nature of the agreement, which is absent. Lozanda requires complaint to the Bar Association, which was apparently not done. There are specific things outside the record that are required by Lozanda, and the record doesn't – and here doesn't indicate they're complied with. How do we deal with that? Well, it was the issue of the conflict and the denial of due process was raised before the board. And what was said before the board and before this Court was, Mr. Zavalos testified exactly as to why he hired counsel. He – all of the interactions between the parties are on the record, so it's not necessary to enlighten the Court. He testified why he hired the lawyer, what he hoped to get out of the lawyer, and the lawyer testified about his actions. Testified that he sent a complaint to the Bar Association? No. He did not – a complaint should be filed in order to show – Lozanda says just to avoid meritless claims from being made, claims that have no possible basis. However, it's not strictly required if explained. In this case, there's no claim that the counsel acted with any malice or with any intent to harm Mr. Zavalos. He apparently believed that he could walk this very fine line. So all of the reasons why Zavalos requires you to explain what kind of retainer you had and whether or not you went to the bar have been satisfied. Again, it's not a motion to reopen because it's not a surprise. Traditionally, typically, Lozada claims come after all other avenues have been exhausted and there was nothing on the record that would allow the issue to be raised. We believe, of course, reasonable minds can differ, but we believe that the record as of the close of the hearings in front of the IAJ was complete as to what the conflict was and what effect it had on the outcome of the case. All right, counsel. You have exceeded your time. We will give you one minute for rebuttal. Thank you. May it please the Court, Joan Smiley from the Department of Justice for Attorney General Gonzales. In this case, there is substantial evidence that Petitioner participated in the torture and persecution of suspected Shining Path members. When he was a police officer in the Ayacucho prison, at page 71 of the record in the judge's decision, Immigration Judge Dana Marks Keener refers to the testimony that the torture to detainees was done to those suspected of Shining Path involvement. In answer to Judge Wallace's question, under the statute, 8 U.S.C. 1101A.42a, the definition of refugee does not include any person who, or excludes any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of a protected ground, which would be race, religion, nationality, membership in a particular social group, or political opinion. And here, the testimony is clear, and the judge's decision references the fact that the torture was perpetrated against these individuals because of their suspected Shining Path involvement in the emergency zone in this Ayacucho prison. Well, you concede that the torture must be for one of five grounds? Yes. That is, when he tortures him, you can't just torture him because he doesn't like him. Well, under 1101A.42a, yes, he would be excluded as a refugee on that basis. What about 1251A.19? Well, we would rely on 1101A.42a as a threshold matter, as he would be excluded from being a refugee, and the analysis could end there, since as a refugee, he's barred on that basis. Here, the position, you assume the burden that you have to show torture on behalf of one of the designated grounds, and your argument is the torture is on political grounds? Yes. Our argument is that the torture was perpetrated on account of the political opinion of those he was torturing. And political opinion includes people who want to destroy governments? Yes. The Shining Path, their goal, according to the record, was to overthrow the government. Murder, mayhem, whatever. That's a political opinion. Yes. Their political views were in opposition to those who were in power, and here Mr. Zavala's actions were knowing, conscious, deliberately undertaken, and his work at the prison, he tries to repudiate his admissions of torture, and I would note that his admissions were made in two different asylum applications, in April 1992 and April 1995. In his April 1994 declaration, and in sworn statements he made to an asylum officer, which set forth in very great detail the torturous acts he committed. These acts included tying Shining Path members' hands to the ceiling to torture them, electrocuting them in tubs of water, and all of these sources that I just mentioned, the two asylum applications, and the declaration and the sworn statement, can be found in the record. Here, this is what the judge relied on in her decision. It was not just some statement he made in passing. The statements were made over and over again in pretty specific detail, setting forth the torture he perpetrated, until he realized at some point that that torture that he had admitted to would bar him from relief. And then, as the judge found, his belated repudiation was highly suspect, and not genuine. She found him not credible, and there's no corroborating evidence that was submitted to substantiate his claims. The judge set forth very clearly, she believed that as he gained more knowledge about the asylum process, he modified his story so as to qualify. And as far as the claim as to counsel's ineffectiveness, Mr. Zavalos obtained representation of his own choice at his own expense. The tactical decisions that were made, and this was by the first representative, his second attorney, who, according to the record, was a seasoned immigration practitioner, two paralegals in that attorney's firm. All of those people, you know, contribute to the belief that these tactical decisions were made that ultimately were detrimental to him. However, that's not necessarily ineffective assistance of counsel. I think your argument would be helpful to us if it were before us. But in this situation, as I understand the record, the petitioner raised this issue before the board. I've read the board decision. The board does not rule upon that issue. How is it before us? Well, the board here adopted and affirmed the decisions of the immigration judge, and indicated that the judge's well-reasoned analysis of the issues were sufficient, and they affirmed on that basis. They adopted it. Was the issue raised before the IJ? Yes, because the former attorney testified on the issue, yes, was before the immigration judge. So the facts were before, but did the petitioner raise the issue of ineffective assistance of counsel before the IJ? Yes. It was part of the testimony that. No, I didn't ask you about that, not the facts. Did the petitioner raise the issue before the IJ that I have suffered ineffective assistance of counsel, and therefore, the whole procedure is flawed? I guess the response would be that it was raised not in the way that you've described, Judge Wallace, but by virtue of the testimony and the evidence that was presented from Mr. Park, the former attorney. Well, the immigration judge never ruled on the issue because the issue was not presented to the IJ of ineffective assistance of counsel. Isn't that true? Well, the immigration judge found Petitioner not credible, and she did not believe the story that he told about the former representation. But, no, she did not find that it was ineffective assistance. That's right, and if you quarrel some on the issue, it's just whether we can rule on it. If the Board had said we disagree that there was ineffective assistance of counsel, then the issue would be before us. But the Board didn't make that, and I don't know how we get around not remanding to the Board for them to make the decision. We, I suppose it's possible for us to make the decision here, but we've been told not to do that. The Supreme Court spanked us a few times on that issue, and so I don't know. You would like to have us rule that because there was some testimony, we can imply that the IJ ruled on the issue, and because the Board said we agree with the IJ, therefore, it's before us. And it was raised to the Board, and the Board adopted and affirmed the immigration judge's decision. But the BIA didn't say anything about the IAC claim, about the ineffective assistance of counsel claim. So what do we do with that claim? But they did adopt and affirm the judge's decision. Okay. Are you suggesting then, counsel, that we should go ahead and affirm the Board's decision or deny the petition on the merits? And then if that's the case, then what should we do with the ineffective assistance of counsel claim? Is there anything to remand to the Board? I don't believe so, because here the Board had that argument before it, and nevertheless adopted and affirmed the immigration judge's decision. So it was presented to the Board, but the Board rejected it by virtue of its adopting the immigration judge's decision, finding in effect no ineffective assistance of counsel, otherwise they would have addressed that, but instead adopted the judge's decision. So, counsel, you're conceding that the IAC claim was exhausted? We did not make the exhaustion argument in our brief, Your Honor. If Mr. Zavalos has believed, then he has admitted that he lied under oath in his first asylum application, and according to his testimony, it was in order to get quick work authorization. That's at page 111 of the record. He also admitted letting his representative present the first application and prepare the case in a way that would make it the strongest. That's at 113 of the record. And he allowed his representative to proceed with the application because he was, quote, looking for a way to be able to establish myself legally. That's at page 350 of the record. Therefore, it seems clear that under the facts of this case, he's barred from refugee status as a persecutor, and there's no viable ineffective assistance of counsel claim. Therefore, we would ask that the Court uphold the Board's decision. Thank you, counsel. Thank you. One minute for rebuttal. There have been some questions about where the counsel issue had been raised before the Board, and it's in the brief, the record starting at page 34. At page 465 of the record is where the Petitioner, through counsel, complains about the former lawyer being called to testify. And the Court fashions a system where it would only address counsel's testimony, would only address the matters that were really relevant to the credibility of the declaration. What I'd like to say, though, is with all of this record ---- But, counsel, before you leave that point, was the issue characterized as one of ineffective assistance of counsel?  That's what I thought. There was one place. I don't have the slide off the top of my head where a question was asked to the counsel about whether he considered getting relieved or telling them. And some questions were allowed to be answered and others an objection was sustained. But the Court raised an interesting problem that we're seeing a lot where the Board summarily says we adopt the argument to the I.J. How does that help this Court in deciding what they passed on as to issues that were raised after the hearing? Because in the typical appeal, you can't raise an issue until the judge has made a ruling. And so they really ---- I think that is a problem and remand may be appropriate. And finally, what I want to emphasize is ---- Counsel, why ---- what purpose would remand serve here? What does the IAC claim go to? Most of the time when we see an IAC claim, we've got a counsel who's missed a filing deadline, failed to file a brief, didn't pass on the notice of appeal to his counsel, has just utterly failed to help out. Here, by your own admission, we have very competent counsel who's participated all the way through, who withdraws halfway through because he believes that his client is lying. And the I.J., as a part of her decision, finds that Mr. Zavallos is incredible because he has recanted testimony that was very clear, that was given repeatedly. Now, what does the ineffective assistance of counsel claim go to here? How does it undermine the I.J.'s decision on the merits? It goes to how the I.J. reached that decision. Mr. Zavallos' prior declarations were explained. And in those declarations, he never, ever said that it was on account of political opinions. If the former counsel did not believe Mr. Zavallos, when Mr. Zavallos came to him in 1997 and said this declaration I signed three years ago is not correct and here's why, counsel, at that point, in my view, and I know it's a very difficult area, but ethically should not have said, I don't believe you, but I'm going to represent you because I've got a defense. Counsel should have said, there's an irreconcilable difference, you need to talk to other lawyers. There may be other lawyers who will handle it the way you want. I can't do it. Is this a due process violation? What's the problem here? I think it's a due process violation because he wound up, he wound up having the I.J. decide that he was not credible because she believed his lawyer was credible. That's about the worst possible position an attorney can find themselves in. Well, she had all kinds of written evidence before her that was different from what Mr. Zavallos was telling her in the hearing. Well, with one major exception, and that major exception is none of the declarations ever referred to the motivation for torture as being political. The counsel testified that he believed Mr. Zavallos was lying because he had done his own research and he had determined that in Ayacucho, the sole, essentially, it wasn't the exact language, but the only reason you would be there would be because you were a political prisoner. So you're suggesting that the only evidence that the people that Mr. Zavallos was engaged in torturing in Ayacucho were members of Sendero Luminoso, were somehow affiliated with Sendero Luminoso, comes from his counsel and not from anything else in the record? No. The finding that had to have been on account of political reasons was because the counsel said, I know from other cases and from my own research what goes on in Ayacucho. And that was cited by the IG. I don't think you answered my question. Is there any evidence in the record, other than statements by counsel, that suggests that the people that Mr. Zavallos was torturing in Ayacucho were somehow affiliated with Sendero Luminoso? Well, they do somehow affiliate. He said some of the people may have been supporters. Some of them may have helped them. So there's evidence on the record that there were people that were probably members or affiliates of Sendero. In the answer to my question, then, it appears to be yes. Is that right? Vague evidence. Nothing as specific as saying. A vague yes. Well, because it's the best I can give with the record that we have. All right, counsel. Thank you. Thank you. Your time has expired. Thank you to both counsel for argument on this case. The case just argued is submitted for decision by the Court. The next case on calendar for argument is.
judges: Wallace, Rawlinson, Bybee